Municipal Court of Dayton.

## P. H. HARMAN COMPANY V. J. E. THORNTON.

Decided August 1, 1931.

*George R. Murray* of Legler & Murray, for plaintiff.
*Thomas J. Kelly,* for defendant.

MILLS, J.

This is an action brought by the Plaintiff, The P. M. Harman Company, against the defendant, J. E. Thornton, on an account for One Hundred and Twenty ($120.00) Dollars, for a rug purchased by the defendant's wife on January 9, 1930.

The testimony discloses the fact that the defendant and his wife together with their two children were living together at 1728 Everett Drive, at the time this rug was purchased by his wife; that they had purchased a new home and had been married about eleven years, and had had the old rug ever since their marriage.

A great deal of the testimony was admitted to show whether or not this particular rug, the old one, supplanted by the new one, was in such a condition that it

needed to be replaced. The defendant's wife testified that the rug was very badly worn all over and that it was torn and in bad condition on one side. The defendant testified that it was in rather good condition and that they did not need a new rug. The Court has looked at the rug and saw that it was very badly worn and torn, unravelled on one side and showed considerable wear. The testimony shows that when J. E. Thornton's wife purchased this rug he was making from Seventy ($70.00) to Eighty ($80.00) Dollars per week and they owned their own home which was worth Eighty-Five Hundred ($8500.00) Dollars, subject to a mortgage of $3500. It was a brick house in Dayton View.

The testimony further shows that a year before the purchase of this rug, the defendant's wife had been at the P. M. Harmon Company and ordered a rug, and an agent for the P. M. Harmon Company had called at the residence by telephone to ask when Mrs. Thornton wished the rug to be delivered. She was not at home, but her husband, the defendant in this case, answered the telephone and informed the agent for the P. M. Harman Company not to send the rug out until he was further notified.

Sometime in November, previous to January, 1930, the defendant and his wife had some domestic trouble and she consulted an attorney for the purpose of filing a divorce suit. The testimony is very clear that the defendant was a traveling man and that he was out of town all week except Saturday and Sunday of each week. When he was at home, it appears on January 6th that when the defendant's wife took him to the traction car to go away, she told him that she thought she would file a divorce suit against him and he replied that if she felt that way about it he wouldn't stop her. The testimony shows that she consulted her attorney on Friday or Saturday, previous to the ninth of January, when this rug was purchased, and had made arrangements to file her suit for divorce. The records show that the rug was delivered on January 9, and the divorce suit filed January 10, 1930. The rug had been purchased several days prior and evidently from the testimony after she had consulted her attorney about the divorce action and

that then she had actually made the purchase from the P. M. Harman Company. All the evidence shows that the P. M. Harman Company did not know that any domestic trouble existed between the defendant and his wife or of any contemplation of separation at the time the rug was purchased and that hence they were an innocent party at the time of the sale and delivery of the rug. A year previous to this transaction, P. M. Harman's books show that the defendant's wife had purchased draperies and a few other articles, which had been delivered to her home and charged to J. E. Thornton, but this account had been closed when she had purchased the rug in question from the P. M. Harman Company.

Quoting from O. D. Vo. 3, page 336, *Shillito and Company* v. *Duhme*. This case was decided by Judge Mallon, 1858, which is as follows:

"Petition filed for bill of goods sold Duhme's wife. Answer by Duhme that his wife, at the time, had voluntarily separated from him. Replying that Shillito & Company had no notice of separation. Duhme demurs. Held, by Judge Mallon that cohabitation is the foundation of the husband's liability; and the only question raised by the pleadings is, were Shillito and Company entitled to notice from the husband of his wife's separation, or did they sell the goods to her at their peril.

There is a conflict in the authorities upon this point, but the better opinion, and the result of the American authorities seems to be that the husband is not bound to give the notice, and that if the merchant sells his goods without inquiry, he is bound by the then relations of husband and wife; and if the wife voluntarily separates from her husband, the husband is not liable."

In this case the defendant told his wife to use her own judgment as to filing a divorce suit and the testimony shows that he still remained in the home until April and slept downstairs in the davenport in the hopes of reconciliation. It also shows that he saw the rug on the floor and that he asked his wife about it but she told him that her mother had purchased the rug and paid for it and had given it to her, Mrs. Thornton, because of the fact that Mrs. Thornton's mother and father had lived with them sometime previous. The record shows

that Mr. Thornton did not make any inquiry from anyone as to where the rug came from, when, how much it cost, and whether or not it was paid for. Letters came during this time for Mr. Thornton from the P. M. Harman Company inclosing bill for this rug for $120.00, but the wife destroyed them so that Mr. Thornton would not see them and take note of the bill. The record shows that he did not get any notice until the thirteenth of June and that an agent came to his place of business to collect. He then went down to the P. M. Harman Company and told them what Mrs. Thornton had told him. The divorce case was finally tried and a decree was granted and alimony settlement was made, but the defendant, J. E. Thornton, had the rug charged to him and his wife had ownership of same for the decree was signed in the court whereby Mrs. Thornton, wife of the defendant, was given sole title to all the furniture and personal property, which, of course, included this rug. Then Mr. Thornton knew that these articles were charged to him prior to the final decree and that he was given the title to the real property.

Quoting from 13 R. C. L., page 1200, Section 233, as follows:

"Though there are decisions to the contrary, the better view seems to be that in order to render a husband liable for necessaries furnished his wife they must have been furnished on his credit. As has been said, if a tradesman furnishes goods to a wife, and gives the credit to her, the husband is not liable, though she was at the time living with him, and a fortiori, he is not liable if they were living apart. Whether credit in any case is given to the woman or her husband, is a question of fact to be determined by the jury. The presentation of a bill to the wife is not conclusive evidence that the necescaries were supplied solely on her credit instead of the credit of her husband."

It is true that this rug was delivered to the defendant and that prior to the filing of this divorce suit that the P. M. Harman Company knew nothing of the intended separation. Quoting from 13 R. C. L., page 1199:

"So a person seeking to charge a man for necessaries

supplied to the wife must show not only that the articles supplied were necessary, but also that the husband has neglected to supply them, the presumption being that he is not liable. It has sometimes been stated that the liability of a husband for necessaries furnished his wife is based on her implied agency."

Quoting further from 13 R. C. L., page 1182:

"The power of a wife over her husband's affairs is usually more extensive in case of his absence for long periods of time, than when he is at home managing his own business, and if she exceeds her legitimate authority under such circumstances, the husband on his return and after knowledge of her acts on his behalf should disavow them."

Quoting from 13 R. C. L., page 1178 and 1180:

"A husband may of course constitute his wife his agent so as to render her acts within the scope of her authority binding on him. On the other hand, as a general rule, a wife can bind her husband by her contract as his agent only when acting under his authority or with his concurrence express or implied. The agency of the wife for her husband is frequently spoken of as being of two kinds: (1) that which the law creates as the result of the marriage relation, by virtue of which the wife is authorized to pledge the husband's credit for the purpose of obtaining those necessaries which the husband himself has neglected or refused to furnish; (2) that which arises from the authority of the husband, expressly or impliedly conferred, as in other cases. The first of these, sometimes called an 'agency in law' or an 'agency of necessity,' is not, accurately speaking, referable to the law of agency; for the liability of the husband in such cases is not at all dependent upon any authority conferred by him. He would, under such circumstances, be liable, although the necessaries were furnished to the wife against his express orders. The real foundation of the husband's liability in such cases is the clear legal duty of every husband to support his wife and supply her with necessaries suitable to her situation and his own circumstances and condition in life. Where money was deposited by a husband in the joint names of himself and his wife, it has been held that the bank was not justified in paying out the same on the check of the wife alone. If a man and woman live together as husband and wife, and he represents

her as his wife and they are so treated and recognized, her authority to bind him as his agent is, as regards third persons, the same as though they were in fact husband and wife; when a man holds out a woman to the world as his wife he is estopped to deny the relation as against tradesmen who deal with her on his account. * * * Cohabitation of itself furnishes presumptive evidence of a husband's assent to the contracts made by the wife for articles and household supplies suitable to his degree and estate.

Where a wife is at the head of a household, and acting as its mistress, orders the usual supplies, such as are needed for its appropriate maintenance, the ordinary reasons on which it is held that any one who holds out another as authorized to contract for him is bound by the agreements thus made, will make the husband liable. This presumption is said to be founded on the well known fact that in modern society, almost universally, the wife, as the manager of the household, is clothed with authority thus to pledge her husband's credit for articles of ordinary household use. This agency, however, is limited to articles that are reasonably necessary for her or the family, and does not extend to business contracts, nor to purchases beyond what may be regarded as suitable to their situation and condition in life. Still the agency of the wife to make purchases of a character ever other than those of a general household nature which are included in the ordinary term "necessaries" is implied, if the husband has, without objection, permitted her to contract bills of a similar nature on his credit, or has paid such bills previously incurred.* * *

Still the mere fact that the husband privately forebade her to act for him will not relieve him from liability, where it appears that he has recognized her agency, or has in some way allowed her to apear to have charge of his house. In the case of a wife dealing with a tradesman for the first time and without any communication with or without knowledge on the part of the husband, it is generally recognized that there is no holding out by the husband of any general authority to make purchases even of necessaries on his credit, and such authority will not be conclusively presumed from the marital relation."

Section 8003 of the General Code provides that if the husband neglects to make adequate provisions for the support of his wife, any other person in good faith may

supply her with the necessities for her support and recover reasonable values from the husband.

Quoting from Tiffany's Persons and Domestic Relations, page 119:

"Where the husband and wife are living together, a presumption arises, from the fact of cohabitation, that the husband has in fact given the wife authority to purchase necessaries on his credit. In other words, where a tradesman brings an action against the husband for articles furnished the wife on the husband's credit, he makes out a *prima facie* case by showing that the wife was living with her husband, and that the articles were in kind, quality, and quantity suitable to the husband's fortune and station in life."

Quoting further from Ohio Jurisprudence, Volume 4, pages 61 and 62:

"The term 'necessaries' as used in the statute includes whatever is necessary to sustain or maintain a living person, such as food, heat, clothing, medicine, habitation, or education. However, the term is not limited to that which is indispensable but includes all articles enabling a family to live conveniently and decently according to the custom of the country in which they reside. Thus it has been held that a heating apparatus used in dwelling houses of sufficient convenience and accomodation to have bathrooms and bathtubs so as to give the families convenience of hot water for bathing purposes is necessary in the state of comfort and society in which the defendants lived and moved and that therefore, such a water heater was a necessary, within the meaning of the statute. A claim must be for something classified as necessary and a reasonable quantity; but the creditor is not bound to inquire, as he is in the case of an infant, whether the person he is dealing with is already supplied. The term necessaries as generally understood includes purchases made by minors and married women for which the estate of the minor, his parent, or the husband is bound to pay according to the estate, circumstances, and condition of the parties concerned."

Quoting further from page 121 of Tiffany's Persons and Domestic Relations:

"Where a husband neglects to provide for or support his wife, even if they are cohabiting, the wife has an ab-

solute right to pledge his credit for necessaries. She has this right even though there is no agency in fact, for the agency is implied in law without regard to the fact. The husband's liability is based on the theory of agency, but the agency is implied as a matter of law because of the husband's legal duty to support his wife."

As to the definition of the word "necessaries," on this subject, Volume 30, Corpus Juris, pages 601 and 602 has the clearest definition which is as follows:

"In a general way, it may be said that whatever naturally and reasonably tends to relieve distress, or materially and in some essential particular to promote comfort, either of body or mind, may be deemed to be a necessary, for which a wife, under proper circumstances, may pledge her husband's credit.*  *  *"

"The liability of the husband is not limited to articles required to sustain life or preserve decency; it extends to articles which would ordinarily be necessary and suitable in view of the rank, position, fortune, earning capacity, and mode of living, of the husband.*  *  *"

"The mere fact that more or other goods than her necessities require are sold to the wife will not prevent a recovery for those that are properly necessaries."

Quoting further from Schouler on Marriage and Divorce, page 114:

"The simple circumstances that husband and wife are living together has been generally held sufficient, when nothing to the contrary intervenes, to raise a presumption that the wife is rightly making such purchases of necessaries as she may deem proper. Whoever then supplies her in good faith, as the law has usually been understood, need inquire no further, but may send his bill to her husband. The rule is a fair one; for it is not to be supposed that a husband will go in person to buy every article of dress or household provision—which may be needful for his family. Otherwise a wife would be of little use to her husband."

And 30 Corpus Juris, Page 603, says:

"Necessaries include suitable furniture. Particular matters held to be necessaries include a lamp, a sofa cushion, *  *  *. There is some authority for the view that if the articles purchased are such as are ordinarily used in households such as the husband maintains, he will be

liable notwithstanding it may turn out that the articles were not necessary to the comfort of the family, or were needed under the particular circumstances, unless it was known to the tradesman that they were not needed."

And quoting further from 30 Corpus Juris, page 617:

"An act done or contract made, by the wife as assumed agent for the husband may be subsequently ratified by, and thereby made binding upon, him. The rule is applicable to loans by the wife of the husband's money, sales by her of his property, and purchases by her on his credit. Regardless of whether or not the articles purchased are necessaries, or whether or not they were purchased under such circumstances as to render the husband liable as for necessaries, he is liable for the purchase. This is true, although the spouses were living separate. Ratification may arise by subsequent promise of the husband to pay the debt. *The husband is liable for the price of goods purchased by the wife on his credit where he, knowing that she possesses and uses them, does not express any disapproval, or where, with the knowledge of the husband, the articles are brought into the home and he does not return, or offer to return, them nor repudiate the contract.*"

And quoting further from 30 Corpus Juris, page 601:

"But if the credit was not given to the wife but to the husband, a ratification of her purchases by the husband will make him liable."

The Court is not guided by an Ohio precedent in any lower or higher court decisions, and the Court admits that this is a peculiar case within itself, inasmuch as it is close to the border line in several points of the law regarding the liability of the husband for household goods and articles purchased by the wife. Here we have it that a couple were having domestic trouble. She had consulted a lawyer. She had tried for a year previous to purchase a rug for a living room commensurate with their station in life. The world in general did not know of their domestic trouble, especially the P. M. Harman Company, plaintiff herein. Household articles had been furnished by this plaintiff before, purchased through the defendant's wife as agent, in defendant's name, and they had been paid for by the defendant. The plaintiff, the

P. M. Harman Company, had looked at the rug. The Court also looked at the rug. As a question of fact, the Court feels that the station of life in which the defendant, J. E. Thornton, and his wife lived, that a One Hundred and Twenty ($120.00) Dollar rug for a home with all the surroundings as described by the witnesses, the salary made by the defendant, and the class of people with whom the defendant and his wife mingled; taking into consideration the price paid for the old rug and the time it had been in use, its then worn and frayed condition at the time of the purchase, together with the fact that it was somewhat faded, the Court comes to the conclusion of the fact that a rug was needed by defendant J. E. Thornton and his wife at the time this purchase was made.

As to the law, there is no doubt from the above sections quoted, which are extensive and cover almost every state in the Union, and by the best American authorities, that this rug was a necessary and that defendant's wife had authority to purchase as an agent. They were living together, although it is true that they separated and contemplated separation, that defendant's wife contemplated separation, but was that known to the world? And, assuming that defendant, J. E. Thornton's wife purchased this rug without authority, it comes under the classification of necessaries and was it not his duty to notify the P. M. Harman Company that he did not want this rug and they should come and take it back? The Court feels that since he was living with his wife in the house from January 9th until April that he tacitly ratified said account of his wife as agent with the P. M. Harman Company, who is an innocent party and who had no knowledge whatsoever of their domestic trouble, and who had no knowledge whatsoever of the fact that defendant Thornton's wife misrepresented the fact to Thornton that Thornton's mother-in-law purchased the rug for his wife. Thornton was in a better position than anyone to know whether or not his wife was telling him the truth, especially in view of the fact that she had sued him for a divorce.

If this Court were sitting as between J. E. Thornton and Mrs. Thornton to determine the rights of the parties

as to who would be the owner of this particular rug, and with all the evidence before the Court as he has it, and the misrepresentation of the defendant's wife to Thornton regarding the purchase of this rug, the Court would have no hesitancy whatsoever in awarding the title of this rug to the defendant, J. E. Thornton. The Court feels sorry for the defendant, J. E. Thornton, under the circumstances, and yet there is a principle of law involved and the rights of an innocent third party which must be protected. Here is the innocent third party who furnished to Thornton's wife as agent for Thornton and Thornton's family, a rug, the price and quality of which was well within the station of life in which the Thorntons were situated at the time the Thorntons were cohabiting, living together, and holding themselves out to the world as living together in a peaceful household.

It is therefore the Court's finding for the plaintiff, the P. M. Harman Company, and against the defendant, J. E. Thornton, in the amount of One Hundred and Twenty ($120.00) Dollars, together with interest and costs as prayed for in the Statement of Claim.